2021 IL App (4th) 200401

NO. 4-20-0401

FILED
February 11, 2021
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* CUSTODY OF H.J. and L.J., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (Patrick E. Lee and Lisa D. Lee, | ) | Sangamon County |
| Petitioners-Appellants, | ) | Nos. 15JA182 |
| v. | ) | 15JA183 |
| Kristina Calhoun, | ) | |
| Respondent-Appellee). | ) | Honorable |
| | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court, with opinion.
Justices Harris and Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1        In December 2017, the trial court terminated the parental rights of Shaundra J. and Joseph J. to their minor children H.J. (born in December 2008) and L.J. (born in January 2011). Two months earlier, in October 2017, foster parent Kristina Calhoun filed a petition for custody or guardianship of the minor children. Ultimately, in parallel proceedings that began in coordination with the Department of Children and Family Services (DCFS), Calhoun started the process of adopting H.J. and L.J., eventually filing an adoption petition in the Sangamon County probate court in July 2018 (Sangamon County case No. 18-AD-66). DCFS eventually changed its recommendation for H.J. and L.J. from adoption by Calhoun to placing the minor children with their maternal grandparents in Alaska. In September 2018, the maternal grandparents, petitioners Patrick E. Lee and Lisa D. Lee (collectively the Lees), filed a petition for custody or guardianship of the minor children. After 17 days of hearings, from January to October 2019, the trial court

denied the Lees' petition, granted Calhoun's petition, left wardship open, and set the matter for a permanency review hearing. The Lees appealed the trial court's order, but since the decision was not a final, appealable order, we dismissed the appeal. *In re Custody of H.J.*, 2020 IL App (4th) 190818-U, ¶¶ 1, 16. Thereafter, in July 2020, the trial court held a permanency review hearing where it entered a dispositional order elaborating on the handwritten October 2019 order it rendered from the bench. The trial court entered a Rule 303 finding, ruling the current order final and appealable. See Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 2       On appeal, petitioners challenge the trial court's order denying their guardianship petition and granting Calhoun's petition, labeling the court's decision an abuse of discretion and against the manifest weight of the evidence. Specifically, petitioners argue the trial court's best-interests analysis "ignored the importance of maintaining families together and sibling consolidation, which are the foundations of the child welfare system and DCFS." Calhoun counters by arguing, first, the Lees lack standing to appeal the trial court's order and, second, the court's order does not go against the manifest weight of the evidence. We affirm.

¶ 3                          I. BACKGROUND

¶ 4       In October 2015, the State filed a petition for adjudication of neglect with respect to H.J. and L.J., the minor children of Shaundra J. and Joseph J. Following an emergency shelter care hearing, the trial court found there was probable cause to believe the minors were neglected and in need of temporary shelter care. Temporary custody and guardianship were placed with DCFS. In February 2016, the minors were adjudicated neglected and made wards of the court, with custody and guardianship to remain with DCFS. The State's motion for termination of parental rights was filed in April 2017. After a hearing in December 2017, a finding of unfitness was entered as to both parents. The court also found it was in the minors' best interests to terminate

parental rights. Both parents appealed the court's ruling, which this court affirmed in May 2018. See *In re H.J.*, 2018 IL App (4th) 170951-U; *In re H.J.*, 2018 IL App (4th) 170955-U.

¶ 5 The voluminous record in this case reveals the following. As the underlying neglect cases proceeded to termination of parental rights, the maternal grandparents became involved. Their belated entrance into the litigation came as a result of what DCFS ultimately admitted was its failure to contact the Lees in a timely fashion. Indeed, the record confirms that the caseworker, Tara Herbord, unilaterally decided to disregard DCFS policy and protocol and elected not to alert the Lees that their granddaughters were in care. Jason Cummins, Herbord's supervisor, compounded Herbord's failure by neglecting to follow up on why his subordinate did not make the required communications to the girls' family. The Lees argued DCFS did not follow its own policy and procedures when it failed to contact them after learning of their interest in November 2015.

¶ 6 The record reflects that, in March 2017, the Lees finally learned their granddaughters were in DCFS's care. The Lees immediately contacted the caseworker and the trial court, asking to adopt the girls and offering to provide a family placement in the interim. Without consulting her superiors or DCFS policy, Herbord informed the Lees that they could not adopt the girls. Upon learning of the Lees' interest, Calhoun contacted the caseworker and moved to secure her interest in adopting the girls as well. In April 2017, Calhoun filed a "Notice of Right to be Heard," exercising her status provided by statute as the current foster parent for both minors and noting that she had a statutory right to be heard in the proceedings according to the Juvenile Court Act of 1987 (705 ILCS 405/1-5(2)(a) (West 2016)). In the meantime, the paternal grandmother, Lisa Johnson, filed a petition to intervene as well. The trial court granted Calhoun's request to be heard in May 2017 and also allowed her oral motion to participate as a party in the guardianship

proceedings. At the hearing on the paternal grandmother's petition in May, counsel for the State noted both the State and the court were aware of the Lees and their desire to be considered for placement. Counsel for DCFS referenced the Lees as well. The trial court permitted Johnson to participate but not as a party to the proceedings. Calhoun next filed a petition for custody or guardianship of the minor children in October 2017.

¶ 7    In July 2018, the neglect case took a dramatic turn when acting regional administrator, Maria Miller, learned of Cummins's and Herbord's failures. Miller made the critical decision to change DCFS's recommendation for the girls from adoption by Calhoun to placement with and adoption by the Lees. Later in July, after the Lees learned Herbord misled them into thinking they were not an eligible placement for their granddaughters and that they could adopt the girls, the Lees filed a petition for leave to intervene with the trial court, claiming it was in the best interests of both minor children to reside with them. The petition stated the Lees had previously adopted the minors' older half-brother when he was three years old, and he continued to reside with them in Alaska. The petition pointed out that the Lees were unaware of the minors' foster care placement until March 2017 and, upon learning of their placement, the Lees contacted DCFS to establish contact with the minors and initiated the process to become a potential placement. In August 2018, the court denied the Lees' petition to intervene, a petition that was, by that time, supported by DCFS, but the court allowed the Lees' attorney to be present during future hearings "due to issues that may come up in [the] adoption case."

¶ 8    In September 2018, the Lees filed a petition for custody or guardianship of the minors in the neglect cases. In October 2018, the trial court held a status hearing to consider the Lees' petition and their renewed request to actively participate in the proceedings. Again, the trial court ruled that the Lees and their counsel "are not allowed to intervene and participate with any

and all facets of the case" but they "are allowed to participate specifically regarding their motion for custody and guardianship." Consequently, the cross-petitions for custody and guardianship proceeded under the same cause numbers as the underlying neglect cases. The record before us contains no written objection to the Lees' participation under the limited circumstances the trial court outlined in October 2018, nor is there a record of Calhoun or DCFS moving to dismiss the Lees' petition based on lack of standing.

¶ 9       Starting in January 2019 and concluding in October 2019, the trial court presided over 17 days of hearings involving litigation between Calhoun, the Lees, the guardian *ad litem*, DCFS, and the State. The court heard testimony from 16 different witnesses, most called by Calhoun. The court rendered its decision from the bench, addressing the best-interests-of-the-child factors before granting Calhoun's petition and denying the Lees' competing petition.

¶ 10       Though the trial court found the Lees and Calhoun evenly balanced in the best-interests analysis, saying most of the factors "cut both ways," it reasoned, in part, that since the minors have resided with Calhoun for such a significant period of time, removing them from that environment and placing them elsewhere would traumatize them, especially H.J., whom the court labeled "incredibly fragile." The trial court acknowledged remaining thousands of miles from their biological family (grandparents, siblings, and a large extended family) might very well cause some unknown harm to the children, but it believed removing them from Calhoun would cause them a known harm, saying: "I just can't bring myself to harm these children, a known harm, and I can't bring myself to do it, particularly with Dr. Schmidt saying there's no way to know for sure if they would bounce back." Upon granting Calhoun's guardianship petition and denying the Lees' petition, the court stated wardship would remain open and set the matter for a future review hearing approximately four months later. At the July 2020 hearing, the court reduced its October 2019

verbal order to a written dispositional order.

¶ 11       This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13       We initially comment on the delay in the issuance of this order. As a matter addressing the custody of minor children, this case is subject to expedited disposition under Illinois Supreme Court Rule 311(a)(5) (eff. July 1, 2018), requiring the appellate court to issue its decision within 150 days after the filing of a notice of appeal, except for good cause shown. The Lees filed their notice of appeal on August 18, 2020, and the case was submitted for our review on November 18, 2020. Although every effort was made to comply with the deadline under Rule 311(a)(5), the voluminous record consisting of a common-law record of 2002 pages, report of proceedings of 3314 pages, and 995 pages of exhibits precluded us from doing so, and we find good cause exists for the delay.

¶ 14       The Lees' allegation that the trial court's award of custody to Calhoun is against the manifest weight of the evidence is premised on the policies and procedures of DCFS, which give substantial weight to familial bonds and sibling consolidation. According to the Lees, this essentially creates a presumption in their favor, which Calhoun did not overcome. Calhoun maintains the limited standing the Lees were given by the trial court precludes them from appealing the court's order. Calhoun also maintains that, even if the Lees have standing, the court's order was supported by the manifest weight of the evidence. We affirm the trial court's judgment.

¶ 15                                    A. Standing

¶ 16       Calhoun challenges the Lees' standing to appeal the trial court's decision, claiming the Lees are "non-parties" to the underlying juvenile matter and cannot appeal. Alternatively, Calhoun argues the Lees waived the standing issue on appeal by failing to raise any issue relating

to the court's denial of their motion to intervene in their appellate brief. We disagree on both points and find the Lees have standing to appeal the trial court's order denying their petition for custody and guardianship of H.J. and L.J.

¶ 17        To the extent Calhoun argues the Lees waived the standing issue, we disagree. Lack of standing is an affirmative defense; thus, it was Calhoun's burden to raise the issue, not the Lees'. See *U.S. Bank, N.A. v. Kosterman*, 2015 IL App (1st) 133627, ¶ 8, 39 N.E.3d 245; see also *In re Custody of K.P.L.*, 304 Ill. App. 3d 481, 487, 710 N.E.2d 875, 879 (1999) ("[T]he case law unequivocally considers standing to be an affirmative defense, squarely placing the initial burden upon [the opposing party] to raise the issue and deeming the issue waived if not so raised."). To the extent Calhoun challenges the Lees' standing because they failed to timely appeal the trial court's decision denying their motion to intervene and instead remain nonparties to the underlying neglect matters, we agree in part, but nevertheless, we find the Lees have standing. The voluminous record shows the Lees did not immediately appeal the trial court's order denying their motion to intervene. See Ill. S. Ct. R. 303(a) (eff. July 1, 2017) (giving appellants 30 days following a final judgment to file a notice of appeal). Calhoun rightly notes the Lees' brief does not address the court's denial of their motion to intervene. This is not fatal, however, because the Lees are appealing the very issue they were allowed to litigate—the order on their custody and guardianship petition. They have standing to appeal that specific order.

¶ 18        "Standing is a common law concept, satisfied if a 'party has a real interest in the outcome of the controversy.' " *In re N.C.*, 2014 IL 116532, ¶ 42, 12 N.E.3d 23 (quoting *People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van*, 177 Ill. 2d 314, 328, 685 N.E.2d 1370, 1377 (1997)); see also *In re M.I.*, 2011 IL App (1st) 100865, ¶ 58, 964 N.E.2d 72 (" 'The doctrine of standing is intended to insure that issues are raised and argued only by those parties

- 7 -

with a real interest in the outcome of the controversy.' " (quoting *People v. Greco*, 204 Ill. 2d 400, 409, 790 N.E.2d 846, 852 (2003))). The standing doctrine's purpose "is to ensure that courts are deciding actual, specific controversies, and not abstract questions or moot issues." (Internal quotation marks omitted.) *Unifund CCR Partners v. Shah*, 407 Ill. App. 3d 737, 740, 946 N.E.2d 885, 889 (2011). But ultimately, " '[s]tanding is an element of justiciability, and it must be defined on a case-by-case basis.' " *M.I.*, 2011 IL App (1st) 100865, ¶ 58 (quoting *Greco*, 204 Ill. 2d at 409).

¶ 19　　　　In this particular case, the record confirms the trial court denied the Lees' motion to intervene in the underlying juvenile cases but allowed them to actively "participate specifically regarding their [petition] for custody and guardianship." Notably, our review of the common-law record and report of proceedings reveals Calhoun did not move to dismiss the Lees' petition or object to their participation in litigating their own petition based on lack of standing or their status as nonparties. Likewise, Calhoun's brief provides no record citation where she raised an oral or written objection to the Lees' standing. See *K.P.L.*, 304 Ill. App. 3d at 487 (explaining the standing defense can be waived if not raised in the trial court). Instead, the Lees litigated their petition, the trial court considered the cross-petitions for custody and guardianship from Calhoun and the Lees, and it decided the controversy on the merits by considering the best interests of the minor children. Indeed, the court "denied" the Lees' petition and did not dismiss it—denying a petition signifies the court considered the merits rather than dismiss it as defective in some way. See generally *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶¶ 25-34, 988 N.E.2d 984 (explaining motions to dismiss pursuant to either sections 2-615 or 2-619 in the Code of Civil Procedure do not require fact finding to consider the pleading's merits but can be dismissed on legal grounds like failure to state a claim, affirmative matters, or other defects on the fact of the

pleading); *Peters v. Riggs*, 2015 IL App (4th) 140043, ¶¶ 39-40, 32 N.E.3d 49 (same). Nevertheless, the record shows the Lees had a real interest in their petition for custody and guardianship of their granddaughters. See *N.C.*, 2014 IL 116532, ¶ 42. Since the court allowed the Lees to litigate their petition and allowed them to participate in the specific controversy of cross-petitions for custody and guardianship of H.J. and L.J., and since no one moved to dismiss the Lees' petition or made a record of an objection to their participation based on lack of standing, the issue has been forfeited. We conclude the Lees have standing to appeal the trial court's order. See generally *Unifund CCR Partners*, 407 Ill. App. 3d at 740 (explaining the principles for standing); *K.P.L.*, 304 Ill. App. 3d at 486 (explaining a party forfeits the standing defense if it fails to raise it in the trial court in a motion to dismiss).

¶ 20                              B. Best-Interests Determination

¶ 21          Having found the Lees have standing to appeal, we now turn to their argument that the trial court's order denying their custody and guardianship petition and granting Calhoun's petition stands against the manifest weight of the evidence and constitutes an abuse of discretion. The Lees characterize this matter as a "close case where a fully competent and willing relative placement option is available." They claim the court failed to give sufficient weight to biological familial bonds and sibling consolidation, which they consider "overriding and overwhelming principles" and which "are the very essence of the best interest of a child." We disagree.

¶ 22          "[I]t is well established that the paramount consideration in all guardianship and child custody cases is the best interest of the child." *In re Violetta B.*, 210 Ill. App. 3d 521, 533, 568 N.E.2d 1345, 1352 (1991); see also *K.P.L.*, 304 Ill. App. 3d at 487-88 ("The primary consideration in any custody dispute is the best interests and welfare of the child."). This would hold equally true when a trial court is considering cross-petitions for custody and guardianship of

minor children who have been adjudicated abused or neglected. These best-interests factors are provided by statute and include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child." *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072, 859 N.E.2d 123, 141 (2006).

See also 705 ILCS 405/1-3(4.05) (West 2016).

¶ 23 A trial court's determination as to the best interests of the child in a guardianship-custody matter will not be reversed on appeal unless the order is against the manifest weight of the evidence. *Violetta B.*, 210 Ill. App. 3d at 536. The court's decision will be found to be "against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16, 73 N.E.3d 616. This is a highly deferential standard of review because "the trial court is in a much better position than is this court to observe the witnesses, assess credibility, and weigh the evidence." *In re T.B.*, 215 Ill. App. 3d 1059, 1062, 574 N.E.2d 893, 896 (1991). Consequently, we

- 10 -

will not substitute our judgment or "overturn the trial court's findings merely because [we] might have reached a different decision." *T.B.*, 215 Ill. App. 3d at 1062.

¶ 24    The Lees' argument acknowledges this was a "close case." We agree with them on that point, and as a result, the standard of review compels us to affirm the trial court's judgment. After a careful review of this substantial record, we cannot say the trial court's decision goes against the manifest weight of the evidence. It was not an unreasonable or arbitrary decision, the opposite conclusion is not clearly apparent, and the court's decision was based on the evidence. See *Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. The trial court rendered its decision from the bench, finding first, as a threshold matter, both Calhoun and the Lees were "fit, willing, and able to care for the children." It then focused its attention on the best-interests analysis, taking each of the above factors in turn.

¶ 25    Like the Lees, the trial court found this to be a close case, saying most of the best-interests factors "cut both ways." For example, the trial court found both Calhoun and the Lees could attend to the physical safety and welfare of the children. As for the minor children's identity, the court acknowledged the Lees could provide "family identity" but found the girls "established an identity with Miss Calhoun and the children in her care." The court found the next factor, the children's background and ties, including family, culture, and religion, "weigh[ed] in favor of the Lees, as far as blood family," yet the court did not discount the substantial period of time the children spent in Calhoun's care. As for their sense of attachment, security, and familiarity, the trial court found the children are attached to Calhoun but found they could develop attachment to the Lees. Likewise, the court noted the girls felt secure and familiar with Calhoun, but, again, it found they could establish the same with the Lees. Regarding the children's wishes and goals, the court gave no weight to the girls' desire to live with Calhoun because they were unaware their

grandparents wanted to adopt them and give them a home with their family. For whatever reasons, the trial court did not elaborate upon the final best-interests factors, though it did at least mention the children's "need for permanence, community ties, the risk attendant to entering and being in substitute care." We infer the court found these factors "cut both ways," like it did many of the previous factors.

¶ 26 Without commenting on the remaining statutory best-interests factors, the trial court next considered the potential trauma and harm to the minors, saying:

> "The thing that keeps rolling around in my head, *** everybody has said that there will be trauma if these girls move from [Calhoun] to the Lees. *** So what keeps going around is there's a known harm, an absolute harm, if we move the girls from [Calhoun's care]. There is a potential harm if we leave them with [Calhoun]. *** I cannot bring myself to remove these girls from [Calhoun]. I cannot do it. *** I just can't bring myself to harm these children, a known harm, and I can't bring myself to do it, particularly with Dr. Schmidt saying there's no way to know for sure if they would bounce back. *** It's a long road to go for these girls. [H.J.] just seems so incredibly fragile, and I just can't bring myself again to compound that harm that she's been through already."

The trial court apparently believed the *known* harm to the children, especially H.J., decided this "close case." There was evidence in the record documenting the trauma the children had suffered, and continued to suffer, after losing their parents. Likewise, there was evidence of H.J.'s delicate mental state. The court ultimately found known trauma dispositive, which we suppose would fit

into several best-interests factors—the children's welfare; the children's sense of attachment, security, and familiarity; or the risks attendant to being in substitute care. Since the record contains evidence of ongoing trauma, we cannot now substitute our judgment for the trial court's or say the trial court's conclusion stands against the manifest weight of the evidence. See *In re D.F.*, 201 Ill. 2d 476, 499, 777 N.E.2d 930, 943 (2002) ("A reviewing court *** must not substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn.").

¶ 27        The Lees contend "family does in fact trump possible trauma related to the removal of a child from a foster home," but they cite no authority for that proposition. Instead, they rely primarily on an analysis of various DCFS policies and procedures. They cannot cite authority for their "family trumps trauma" point of view because Illinois law is replete with statements affirming our juvenile system is based upon the best interests of the children. See *Violetta B.*, 210 Ill. App. 3d at 533; *K.P.L.*, 304 Ill. App. 3d at 487-88. Indeed, the children's best interests trump even the parents' rights or interests in their children. See *Violetta B.*, 210 Ill. App. 3d at 533 (stating " 'the parents' right to the custody of their child shall not prevail when the court determines that it is contrary to the best interests of the child' " (quoting Ill. Rev. Stat. 1989, ch. 37, ¶ 801-2(3)(c))). " 'A child's best interest is not part of an equation. It is not to be balanced against any other interest. In custody cases, a child's best interest is and must remain inviolate and impregnable from all other factors, including the interests of the biological parents.' " *In re M.C.*, 2018 IL App (4th) 180144, ¶ 30, 110 N.E.3d 346 (quoting *In re Ashley K.*, 212 Ill. App. 3d 849, 879, 571 N.E.2d 905, 923 (1991)). We must then conclude the children's best interests certainly trump the grandparents' interests in maintaining their biological family. See *Violetta B.*, 210 Ill. App. 3d at 533 (stating the best interests of the child control placement decisions, even placement with close relatives). While

we can certainly sympathize with the Lees, who so badly wanted their granddaughters they litigated this matter with the deck stacked against them, we cannot agree with their legal conclusion. We cannot say the trial court's best-interests determination gave insufficient weight to maintaining families and sibling consolidation. We cannot endorse an argument that family trumps trauma in the best-interests analysis.

¶ 28     We acknowledge the Lees have certainly been treated poorly in this process. They were misled from the beginning, and no one in the juvenile court machine helped them until it was too late. But we cannot redress those wrongs. The State of Illinois has failed this family and these children. From DCFS's admitted failure to follow its own policies and objectives to the disclosed failure of a caseworker to make the necessary familial contacts, its ultimate about-face in an effort to salvage a poorly managed case resulted in an entrenched foster parent and equally entrenched grandparents. Finally, the fact that this time-sensitive litigation was permitted to devolve into sprawling, contentious finger-pointing centering on irrelevant issues surrounding DCFS failures was of no benefit to the children, or the Lees. The only party benefiting from the delay was the foster parent, who had momentum on her side. Had the proper procedures been followed at the outset of the case, the children would not have sat in foster care for over four years. Regardless of time or distance, the fact the children were led to believe Calhoun was their only possible chance for permanency was of equal disservice. Now this court may very well be cementing those failures, but the highly deferential standard of review compels this outcome. Our affirmance merely confirms the order does not stand against the manifest weight of the evidence.

¶ 29                                  III. CONCLUSION

¶ 30     For the reasons stated, we affirm the trial court's judgment.

¶ 31     Affirmed.

- 14 -

**No. 4-20-0401**

| | |
|---|---|
| **Cite as:** | *In re Custody of H.J.*, 2021 IL App (4th) 200401 |
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, Nos. 15-JA-182, 15-JA-183; the Hon. Karen S. Tharp, Judge, presiding. |
| **Attorneys for Appellant:** | William F. Moran III, of Stratton, Moran, Reichert, Sronce & Appleton, of Springfield, for appellants. |
| **Attorneys for Appellee:** | Michelle Coady Carter, of Coady Law Group, LLC, of Springfield, for appellee. |