2024 IL App (1st) 232502-U

No. 1-23-2502

Order filed May 10, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* J.V. Jr., a MINOR, | ) | |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 JA 794 |
| | ) | |
| A.S., | ) | Honorable |
| | ) | Kimberly Lewis, |
| Respondent-Appellant). | ) | Judge presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The circuit court's finding that case closure was in the best interests of the minor was not against the manifest weight of the evidence; and its written order was sufficient. Affirmed.

¶ 2    Respondent, A.S., is the biological mother of the minor, J.V. Jr. She appeals from an order of the circuit court closing the minor's case. Respondent contends that it was against the manifest

weight of the evidence for the circuit court to close the case without protecting her rights to visitation, and that the court made deficient written findings. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The minor was born on September 22, 2017. His parents are A.S., the mother, and J.V. Sr., the father. On August 26, 2021, the State filed a petition for adjudication of wardship, arguing that the minor was abused and neglected. The facts supporting neglect and abuse were that the mother often left the minor at home without an adequate care plan. In July 2021, the minor was found home alone. On July 23, 2021, the minor was left at a gas station without appropriate supervision. Per family members, the mother was not taking her psychotropic medication as prescribed. On August 9, 2021, the mother was involved in a physical altercation with the minor while a family member was present. The family member stated that the mother attempted to slap the minor during the incident, which led to an order of protection preventing the mother from having contact with the minor.

¶ 5     On August 30, 2021, an order for temporary custody was entered. The court found that probable cause existed that the minor was abused and neglected based on inadequate supervision and substantial risk of physical injury. Temporary custody was granted to the Department of Child and Family Services (DCFS) Guardianship Administrator, with the right to place the minor, and a guardian *ad litem* was appointed for the minor.

¶ 6     On January 25, 2023, an adjudication order was entered, finding that the minor was abused or neglected due to an injurious environment and substantial risk of physical injury. The court noted that the mother "has untreated mental health issues," and that the mother had prior reports of inadequate supervision. It also noted that while living with the maternal grandparents, "mother was observed striking the minor on his face."

¶ 7    On April 28, 2023, a disposition order was entered finding that both parents were unable to care for the minor and adjudging the minor a ward of the court. A permanency goal of return home within five months was also entered, with a note that the father was "making substantial progress towards return home."

¶ 8    On June 5, 2023, the court held a hearing on the father's motion to return the minor to his care. Evidence was presented that the father had completed his reunification services and had successfully engaged in unsupervised day and overnight visitation with the minor. The evidence also showed that the father and the minor had bonded, established a family relationship, and had "phenomenal" parent-child communication.

¶ 9    The evidence also showed that the mother had engaged in supervised visits with the minor "sporadically once per week" and that she still had several outstanding services to complete, including psychiatric and substance abuse evaluations. The father indicated that he was willing to take the minor to the maternal grandparents' home for continued supervised visits with the mother.

¶ 10    At the conclusion of the hearing, a modified disposition order was entered, finding the mother unable, but finding the father fit, willing, and able to care for, protect, train, and discipline the minor. The court ordered that the minor be returned to the care and custody of the father under an order of protective supervision. The mother appealed this order. Her counsel then filed a motion under *Anders v. California*, 386 U.S. 738 (1967), requesting leave to withdraw as counsel based on the conclusion that no meritorious issues existed to be raised for appellate review. *In re J.V.*, No. 1-23-1079 (unpublished summary order under Illinois Supreme Court Rule 23(c)). This court agreed with the conclusion that there were no issues of arguable merit on appeal, granted counsel's motion for leave to withdraw, and affirmed the judgment of the circuit court. *Id.* ¶ 15.

¶ 11    On September 11, 2023, a hearing was held for a progress report on the minor's return to the father's home. Loreal Frazier, the minor's caseworker at Lutheran Social Services of Illinois, testified that the minor was five years old, and had been placed with his father under an order of protection since June 5, 2023. Frazier visited the home in August 2023 and found it safe and appropriate. She stated that initially, the minor was adjusting well to his father's home, "but due to the report that the natural mother [was] reporting that myself was a stranger, his dad was a stranger, and the maternal grandparents reporting that [the father] was a stranger and myself is a stranger, he started to display mild behavioral issues inside of the home."

¶ 12    Frazier testified that the minor had contact with his maternal grandparents, but visitation had been temporarily paused in July 2023 due to concerns that the maternal grandparents were having an adverse impact on the minor's ability to adjust to living with his father.

¶ 13    Frazier was present at a recent child and family team meeting (CFTM), wherein the minor's therapist "recommended that we give [the minor] enough time to have his behavior stabilized inside of the home before we pick up to in-person visitations with grandparents and mom." This was due in part to the mother telling the minor that his father was a stranger, Frazier was a stranger, and that they could not be trusted.

¶ 14    Frazier noted that the agency was recommending that the case remain open so that "we can get in and help the natural father and the youth stabilize his behavior before the agency recommends case closure."

¶ 15    Frazier further testified that the mother was engaged in individual therapy, domestic violence treatment, and had just completed her education portion of parenting coaching.

¶ 16    On December 6, 2023, another hearing was held, whereupon the assistant state's attorney noted that the case was set for a progress report "and possible case closure." Frazier testified that

4

she staffed this case for closure with her supervisor, her program director, and the clinical staff on November 30, 2023. The clinical staff consisted of the father's therapist, the family therapist, the youth therapist, and the therapist supervisor. The result of the staffing was that the agency recommended case closure.

¶ 17    Frazier testified that after the last hearing, in-person visitation with the mother resumed. The mother was observed "speaking to [the minor] using inappropriate language such as labeling dad and the agency and myself as strangers," in July and August. In October and November, the mother went to the minor's school and tried to remove him from the premises. The mother asked the minor what his address was because the father did not want the mother to have his address at that time.

¶ 18    When asked how the mother would get visitation if the case was closed, Frazier stated that the agency had spoken with the mother and father, and:

> "prepared a visitation plan where the natural father will allow mom to have phone calls. Once phone calls are consistent, they will move to virtual phone calls and once the virtual phone calls are consistent, the natural father and the natural mother have agreed to then move into in-person supervised visitation once it's appropriate."

¶ 19    The agency had not spoken to the grandparents, but Frazier noted that the "dad is willing to speak with the grandparents about facilitating visitation."

¶ 20    Frazier noted that the father and the minor were engaged in family therapy, and that the therapist reported that the father was capable of parenting without the assistance of the agency and the department. The minor's therapist noted that limited progress was made due to the child's age,

"but he continues to thrive and build bonds with his siblings." The minor's teacher reported a substantial difference in his behavior since last school year and noted that he is "thriving."

¶ 21     On cross-examination, Frazier stated that the father was currently working, and that while he was at work, the father's fiancé watched the minor. She reported that the minor and the father's fiancé were creating a bond. She stated that there were no outstanding services that needed to be in place for the family, and that the minor had been in the father's home since June 5, 2023.

¶ 22     Frazier stated that the mother had a job and housing of her own. Frazier has not been able to visit the home yet.

¶ 23     The assistant state's attorney noted that the State was in agreement with case closure. The guardian *ad litem* noted that he agreed to case closure, and that it was very encouraging that the father had indicated a willingness to support the minor's relationship with his mother and grandparents.

¶ 24     The assistant public defender representing the mother objected to case closure. He stated that his client was engaged in services for individual therapy, and that the minor was with "his mother's side of the family for, you know, most of his life up until very recently." Counsel stated that his client would like to keep continuing to pursue reunification.

¶ 25     The court then found that based on the evidence, the minor "is in a loving safe environment. The case has been in the system for two years. This Court is not in the habit via the [Juvenile] Court Act to keep children in the system longer than they have to be." The court then closed the case.

¶ 26     The order that appears in the record indicates via checked boxes that: the family was not in need of further monitoring by the court, that it was in the best interest of the minor for the case

to be closed, that the order of protective supervision was terminated, and the case was closed. Legal custody was to stand with the father. The mother now appeals.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, the mother contends that: (1) the trial court's decision to close the case without giving weight to the question of the mother's visitation was not in the minor's best interest and was therefore against the manifest weight of the evidence; and (2) the trial court made deficient written findings.

¶ 29    We first address the issue of the trial court's written findings. The mother argues that the findings did not adequately set forth a best-interests explanation as required by section 2-31(2) of the Juvenile Court Act (Act) (705 ILCS 405/2-31(2) (West 2020)). Section 2-31(2) of the Act states in part:

> "Whenever the court determines, and makes written factual findings, that health, safety, and the best interests of the minor and the public no longer require the wardship of the court, the court shall order the wardship terminated and all proceedings under this Act respecting that minor finally closed and discharged." *Id*.

¶ 30    The trial court's order indicated via checked boxes that the family was not in need of further monitoring by the court, and that it was in the best interest of the minor for the case to be closed. The order indicated that the order of protective supervision was terminated, and the case was closed. It also stated that legal custody was to stand with the father.

¶ 31    We find that the written order, combined with the trial court's oral findings, satisfied the Juvenile Court Act's requirement that the factual findings be in writing. See *In re Madison H*., 215 Ill. 2d 364, 377 (2005) (an oral finding on the record may satisfy the Act, provided that it is explicit and advises the parties of the basis for the court's decision).

¶ 32    We find *In re K.S.*, 317 Ill. App. 3d 831, 833 (2000), to be instructive. In that case, the trial court executed an identical written order as the one in the case at bar. The court noted in its oral findings that the minors were healthy, doing well, and that there was nothing else the court could offer the children. *Id*. The court also stated that the situation that had given rise to the minors' child protection proceedings had been addressed through intervention services. *Id*. On appeal, this court found that the written order, combined with the oral findings, satisfied the requirements of the Act. *Id*. We declined to remand the cause solely to allow the trial court to reiterate its findings in a written order. *Id*. at 834.

¶ 33    Likewise, here the court made factual findings at the hearing. It advised the parties of the basis for its decision to close the case by noting the length of time that the minor had been a ward of the court, and that the minor was in a safe and loving environment with his father. The court further noted that it was not in the habit of keeping children in the system longer than they had to be. These oral findings explained the court's reasons for closing the case, and therefore satisfied the requirements of the Act. *In re Madison H*., 215 Ill. 2d 364, 377 (2005) (an oral finding on the record may satisfy the Act provided that it is explicit and advises the parties of the basis for the court's decision).

¶ 34    We now turn to the question of whether the trial court's decision to close the case without giving weight to the question of the mother's visitation was against the manifest weight of the evidence. The purpose of the Act is to serve the best interests of the minor involved. 705 ILCS 405/1-2(1) (West 2022). The Act's policy is to achieve permanency for a child "at the earliest opportunity," preferably with the child's biological family. *Id*.; *In re V.M*., 352 Ill. App. 3d 391, 398 (2004) ("Whenever possible, everything must be done to return a child to the care and custody of a biological parent."); *In re D.L*., 191 Ill. 2d 1, 13 (2000) (circuit courts should resolve minors'

child protection cases in an expedited manner "so that minors whose futures are at stake in these proceedings can obtain a prompt, just, and final resolution of their status."). The Act directs a circuit court to terminate a minor's wardship when the court determines that the "best interest of the minor and the public no longer require the wardship of the court." 705 ILCS 405/2-31(2) (West 2022).

¶ 35    A trial court's determination as to the best interests of the child in a guardianship-custody matter will not be reversed on appeal unless the order is against the manifest weight of the evidence. *In re Custody of H.J.*, 2021 IL App (4th) 200401, ¶ 23. The court's decision will be found to be against the manifest weight of the evidence "only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16. This is a highly deferential standard of review because "the trial court is in a much better position than is this court to observe the witnesses, assess credibility, and weigh the evidence." *In re T.B.*, 215 Ill. App. 3d 1059, 1062 (1991). We will not substitute our judgment or "overturn the trial court's findings merely because [we] might have reached a different decision." *Id.*

¶ 36    Here, the mother argues that the order closing the case was against the manifest weight of the evidence because the trial court did not decide the matter of her visitation rights. However, as outlined above, the Act mandates case closure of child protection proceedings whenever the health, safety, and best interest of the child and the public no longer require wardship. See 705 ILCS 405/2-31(2) (West 2020). The Act enumerates several factors for the court to consider. See 705 ILCS 405/1-3 (4.05) (West 2020). These factors include the physical safety and welfare of the child, the development of the child, the development of the child's identity, the child's background and ties, the child's sense of attachments, the least disruptive placement, the child's wishes and

9

long term goals, the child's community ties like church and school, the child's need for permanence, the risks of being in substitute care, and the preferences of the persons available to care for the child. *Id.*

¶ 37    Here, the evidence showed that the minor was subject to abuse and neglect while in the care of the mother. The father participated in child protection proceedings and complied with all of the agency's reunification services. The minor was then returned to the father's care under an order of protection. While in the father's care, the minor continued supervised visitation with the mother, who had not completed reunification services. The minor completed individual and family therapy. The caseworker regularly visited the minor at home and found it to be safe and appropriate. The father ensured that the minor had his service needs met and received necessary medical care. The caseworker noted that the minor had a strong bond with the father's fiancé, and that he was affectionate with his father and his siblings. The minor's therapists reported that he was thriving in his father's care, and his teacher noted that he had been performing well – both behaviorally and academically – in school. Accordingly, it was not against the manifest weight of the evidence for the court to close the minor's case.

¶ 38    Even though visitation of a parent is not one of the factors enumerated in the Act that a court should consider before making a best-interests determination, the mother maintains that the court should have kept the case open to determine her visitation rights. However, during the final hearing in this case regarding case closure, the minor's caseworker stated that the agency had spoken with the mother and father, and:

> "prepared a visitation plan where the natural father will allow mom to have phone calls. Once phone calls are consistent, they will move to virtual phone calls and once the virtual phone calls are consistent, the natural father and the natural mother

have agreed to then move into in-person supervised visitation once it's appropriate."

¶ 39    The father noted that he was willing to speak to the maternal grandparents about facilitating visitation. Accordingly, a plan had been put in place by the parties and the agency, which outlined the visitation timeline for the mother. The manifest weight of the evidence supports a conclusion that there was not a need to continue monitoring visitations and this issue did not require a denial of the motion to close the case. See *In re J.A.*, 2023 IL App (1st) 230198-U, ¶ 74[1] (father understood importance of visitation with maternal family and was willing to schedule visits with them, therefore manifest weight of evidence supported a conclusion there was no need for further monitoring of visitation).

¶ 40    As a final matter, we note that if the mother is at some point in the future no longer happy with the visitation plan that the parties and the agency developed, she can enforce her right to contact with the minor pursuant to the Illinois Marriage and Dissolution of Marriage Act. See 750 ILCS 5/601.2(a), (b)(2) (West 2022) (a proceeding for allocation of parental responsibilities with respect to a child is commenced by filing a petition for allocation of parental responsibilities). However, her dissatisfaction with the plan that was put in place at the time of the permanency hearing does not render the circuit court's finding that case closure was in the best interests of the minor against the manifest weight of the evidence.

¶ 41                                    III. CONCLUSION

¶ 42    For the foregoing reasons, we affirm the judgment of the Circuit Court of Cook County.

¶ 43    Affirmed.

---

[1] Unpublished Rule 23 orders filed on, or after, January 1, 2021, "may be cited for persuasive purposes". Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023)