NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240107-U

NO. 4-24-0107

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 21, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* O.T., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 23JA83 |
| v. | ) | |
| Velus B., | ) | Honorable |
| Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, holding the trial court's finding of unfitness was not against the manifest weight of the evidence.

¶ 2     Respondent, Velus B., appeals from the trial court's order finding him unfit to care for his minor child, O.T. (born July 2019). The court also found the minor's mother, Joyce T., unfit, but she is not a party to this appeal. Respondent argues the court's finding of unfitness was against the manifest weight of the evidence. We affirm.

¶ 3     I. BACKGROUND

¶ 4     On September 7, 2023, the State filed a petition for adjudication of wardship alleging O.T. and her four siblings, Jon. J., Jos. J., N.J., and N.T.-J., were abused under section 405/2-3(2)(v) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2-3(2)(v) (West 2022)). Respondent is only the biological father of O.T., and Joyce was exercising her parenting time with

O.T. when the alleged abuse occurred. The petition alleged Joyce inflicted excessive corporal punishment by repeatedly striking N.J. with a belt in the presence of the other minors. The Illinois Department of Children and Family Services (DCFS) became involved when it received a report on September 5, 2023, that N.J. arrived at school with a bruise in the shape of a handprint on his right shoulder. A DCFS investigator spoke with the minors and observed N.J. had a bloody nose, bruising on his shoulder, and significant bruising all over his back and chest area. N.J. stated he was in a car accident with his family. The other minors claimed their mother hit N.J. with her fist and a belt, specifically the belt buckle, because he spilled something on the carpet. During O.T.'s interview, she acted out the incident showing how her mother hit N.J. with a belt. Joyce confessed to police that she hit N.J. with a belt, and she was arrested for aggravated battery to a child.

¶ 5        A shelter care report provided both parents had previous involvement with DCFS. Respondent was indicated in January 2019 for risk of physical injury as a result of a domestic violence incident with Joyce. The report also provided respondent had a criminal history, which included charges and/or convictions for assault, larceny, burglary, forgery, a drug offense, a weapon offense, and invasion of privacy. Respondent was most recently arrested two months prior to the filing of the State's petition, in July 2023, for domestic battery.

¶ 6        The trial court held a shelter care hearing. Joyce stipulated to probable cause and the immediate and urgent necessity for removal of the minors. The court found the same, granted temporary custody of the minors to DCFS, and appointed a guardian *ad litem* (GAL). Respondent was not present but later appeared before the court and was made aware of the allegations and admonished to contact and cooperate with DCFS.

¶ 7        On November 8, 2023, the trial court held an adjudicatory hearing. Joyce admitted the allegations in the State's petition, and the court found the allegations proven by a preponderance of the evidence and adjudicated the minors as abused.

¶ 8        On December 14, 2023, DCFS filed a dispositional report. Respondent completed an integrated assessment on November 1, 2023, after he canceled two appointments. Respondent stated he had a good relationship with his family, and they provided him with a support system. He had been employed by a distribution center for the past several years, and 42 people work in his department. He was responsible for hiring staff and communicating with various government agencies. When respondent was in a dating relationship with Joyce, he moved her into his home with his mother. His mother and Joyce had a lot of conflict. Respondent stated Joyce had a difficult past and had a lot of anger and aggression. When they had simple disputes, Joyce would want to fight, and the police would be called. Joyce reported in her integrated assessment that respondent was physically and verbally abusive toward her. When Joyce gave birth to O.T., they were already separated and established an equal parenting time arrangement where each parent had O.T. every six months. O.T. last resided with respondent in July 2023.

¶ 9        Respondent provided he was no longer dating his girlfriend from July 2023 because of the domestic battery charge. He explained his girlfriend was often jealous, and when he returned home late after helping his sister with a flat tire, she accused him of lying to her. She blocked the door when he tried to leave, which led to the domestic battery charge. However, he claimed he did not touch her. The charge was dismissed after a grand jury had returned a "no bill." Respondent had been sentenced to terms in the Illinois Department of Corrections three times and was last released in 2016 or 2017. Upon his release, he decided he was going to change and would no longer get in trouble. Respondent denied any history of substance abuse. He had visitation with

O.T. on Tuesday evenings and Saturday afternoons. He was inconsistent with his visits and, as of November 17, 2023, cancelled his Saturday visits going forward due to his work schedule.

¶ 10    As to respondent's progress, the dispositional report noted he cooperated with his caseworker, had stable housing as he lived with his grandmother and mother in a two-story home, had stable employment, interacted with O.T. on a minimal basis, was waitlisted for a domestic violence assessment, and was to begin drug testing in December 2023. The report recommended the trial court find respondent unfit and set a goal of return home within 12 months.

¶ 11    On December 19, 2023, the trial court held a dispositional hearing and took notice of the dispositional report. Respondent was not present. Respondent's counsel provided respondent was quite communicative with her, but she could not get in touch with him for a couple of days leading up to the hearing. The State asked the court to make the minors wards of the court because both parents were unfit. As to respondent, the State argued he needed to cooperate, maintain stable housing and employment, undergo a domestic violence assessment and complete any recommended treatment, pass drug screenings, and visit regularly. The GAL agreed with the State's recommendations. The court agreed with the State that respondent needed to be assessed for domestic violence and other services. The court noted respondent's housing and employment were not concerns. The court entered an order finding respondent unfit, made the minors wards of the court, and set the permanency goal to return home within 12 months.

¶ 12    This appeal followed.

¶ 13                            II. ANALYSIS

¶ 14    The Act provides a two-step process for the trial court to decide whether a minor should be removed from her parents' custody and made a ward of the court. *In re Z.L.*, 2021 IL 126931, ¶ 58. The first step is the adjudicatory hearing on the State's petition for adjudication of

wardship, and the court must consider whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-18(1) (West 2022). If the court makes such a finding, then it determines whether it is consistent with the health, safety, and best interest of the minor and the public that the minor be made a ward of the court. 705 ILCS 405/2-21(2) (West 2022). "At this point, the trial court may consider the acts and/or omissions of the parents." *Z.L.*, 2021 IL 126931, ¶ 60. A finding that a parent is either unfit, unable, or unwilling provides a proper basis for the removal of a minor. *In re Lakita B.*, 297 Ill. App. 3d 985, 992 (1998).

¶ 15        The trial court's dispositional order will be reversed only if its findings of fact are against the manifest weight of the evidence or if it committed an abuse of discretion by selecting an inappropriate dispositional order. *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41. A trial court's finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident. *In re D.F.*, 201 Ill. 2d 476, 498 (2002). This deferential standard of review recognizes the trial court is in a much better position to observe the witnesses, assess credibility, and weigh the evidence. *In re Custody of H.J.*, 2021 IL App (4th) 200401, ¶ 23. "Moreover, due to the delicacy and difficulty of child custody cases, it is well settled that wide discretion is vested in the trial judge to an even greater degree than any ordinary appeal to which the familiar manifest weight principle is applied." (Internal quotation marks omitted). *Lakita B.*, 297 Ill. App. 3d at 994. Accordingly, we will not substitute the trial court's judgment with our own simply because we might have reached a different conclusion. *H.J.*, 2021 IL App (4th) 200401, ¶ 23.

¶ 16        In this case, respondent argues the trial court's dispositional order is against the manifest weight of the evidence because he is fit to care for O.T. and O.T.'s best interest would not be jeopardized if she remained in his custody. Respondent notes he is O.T.'s biological father, is able and willing to care for her, has no substance abuse issues, is employed full-time and has

stable housing, and has been a coparent and caregiver for O.T. The State argues the court's finding of unfitness was proper because respondent has a criminal history involving drugs and domestic violence issues with two different individuals.

¶ 17        After carefully reviewing the record, we cannot say it is clear the trial court should have reached an opposite conclusion as to respondent's fitness. The record demonstrates respondent had yet to complete any drug screens or undergo a domestic violence assessment at the time of the dispositional hearing, the delay of which appears to be attributable to his twice-rescheduled integrated assessment. The drug screens and domestic violence assessment are particularly important in this case, where both drugs and domestic violence appeared in respondent's history. Respondent was also inconsistent with his two weekly scheduled visits with O.T. and voluntarily cancelled one of his two weekly visits until further notice. Although respondent maintained appropriate employment and housing, the aforementioned issues nonetheless rendered him unfit to care for O.T. Under the circumstances presented, we find the court's dispositional finding was not against the manifest weight of the evidence.

¶ 18                                III. CONCLUSION

¶ 19        For the reasons stated, we affirm the trial court's judgment.

¶ 20        Affirmed.