NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250947-U

NO. 4-25-0947

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 2, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* C.R., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
|      Petitioner-Appellee, | ) | No. 22JA51 |
|      v. | ) | |
| Kasha W., | ) | Honorable |
|      Respondent-Appellant). | ) | Katherine G. P. Legge, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Lannerd and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Because no issue of arguable merit can be raised on appeal, appellate counsel's
motion to withdraw is granted and the trial court's judgment is affirmed.

¶ 2   Respondent Kasha W. was previously found unfit and her parental rights terminated
regarding her child, C.R. No appeal was filed from that order. She subsequently filed a petition to
remove her status as an unfit parent. She now appeals from the trial court's September 2, 2025,
order denying her petition.

¶ 3   On appeal, respondent's appellate counsel moved to withdraw as counsel and filed
an accompanying memorandum asserting that no arguably meritorious issue could be raised on
appeal. Respondent was notified of her right to respond but did not do so. For the following
reasons, we grant the motion to withdraw and affirm the trial court's judgment.

¶ 4                                   I. BACKGROUND

¶ 5                              A. Origins of the Case

¶ 6            This case arises from a shelter care petition filed in April 2022 on behalf of C.R., a minor born in 2022. Respondent is C.R.'s biological mother. The petition alleged that respondent neglected and created a dangerous environment for C.R., in violation of section 2-3(1)(b) of the Juvenile Court of 1987 (Act) (705 ILCS 405/2-3(1)(b) (West 2022)), for the following reasons: (1) on or about March 22, 2022, the Illinois Department of Children and Family Services (DCFS) received a hotline call stating that respondent had given gave birth to C.R. and that both mother and child tested positive for amphetamines; (2) on the same day, an investigator spoke to respondent, who admitted to using methamphetamine throughout her pregnancy; (3) three days later, the umbilical cord sample from C.R.'s birth yielded a positive result for amphetamines and methamphetamine; and (4) respondent was found unfit in Tazewell County case Nos. 18-JA-77 and 20-JA-245 and had not at the time of filing "completed services that would restore her fitness."

¶ 7            The trial court entered a temporary custody order, citing as its grounds the reasons set forth in the petition. Temporary custody was given to the guardian administrator of DCFS, who was authorized to place C.R.

¶ 8                           B. Other Intermediate Rulings

¶ 9            A dispositional order was entered on January 24, 2023, adjudicating C.R. to be neglected, finding respondent unfit due to "reasons in the petition," and making C.R. a ward of the court. A supplemental order was entered that same date, requiring respondent to perform a number of tasks in order to correct the conditions that led to the adjudication and removal of C.R. This included successfully engaging in a substance abuse assessment and any related treatment recommended; parenting classes; and counseling. She was also required to submit to random testing for alcohol and/or drugs at least four times per month.

¶ 10          C. Petition for Termination of Parental Rights and Disposition

¶ 11          A petition for termination of parental rights was filed on December 23, 2023, arguing that respondent was unfit in that she had failed to maintain a reasonable degree of interest, concern, or responsibility as to C.R.'s welfare (750 ILCS 50/1(D)(b) (West 2022)) and make reasonable progress toward the return of C.R. to her care within nine months after the adjudication of neglect (March 6, 2023 through December 6, 2023) (*id.* § 1(D)(m)(ii)). A supplemental petition for termination of parental rights was filed on May 15, 2024, which added count V, stating that respondent had executed a final and irrevocable surrender of parental rights respecting C.R. The surrender acknowledged respondent's understanding that she could not, "under any circumstances, after signing this surrender, change [her] mind and revoke or cancel this surrender, or obtain or recover custody or any other rights over" C.R. (Emphasis omitted.) The surrender was signed and certified by the trial court.

¶ 12          On May 15, 2024, the trial court entered an order granting the petition for termination of parental rights, finding first that respondent had signed a final and irrevocable surrender. According to the order, "[Respondent] state[s] that she reviewed the surrender with her attorney. The Court finds that this surrender is knowingly and voluntarily made." The court found that the State had proven that respondent failed to make reasonable progress toward the return of C.R. to her care within nine months after the adjudication of neglect by clear and convincing evidence.

¶ 13          At the conclusion of the best interest hearing, the trial court found, "by a preponderance of the evidence, that it is in the Minor's best interest to terminate the parental rights of [respondent]." The court then appointed DCFS as C.R.'s guardian, with the right to consent to adoption.

¶ 14　　　　A written dispositional order terminating respondent's parental rights was entered on May 22, 2024, finding that all of respondent's residual rights and responsibilities as to C.R. were terminated.

¶ 15　　　　No posttrial motion or notice of appeal was filed.

¶ 16　　　　　　　　　　D. Petition and Amended Petition for Fitness

¶ 17　　　　On April 7, 2025, respondent moved to restore her parental rights as a " 'fit parent,' " arguing that she had "taken substantial steps to address and correct the ordered treatment or classes" and was "in substantial compliance with her court ordered services." An amended petition was filed on July 11, adding allegations that she had completed her probation in Tazewell County case No. 18-CF-257 and her parenting classes and further stating that she had maintained her sobriety. She further alleged that she "was evaluated on June 26th, 2025, using DSM-5 criteria" and that she "did not meet any criteria that warranted diagnosis for mental health disorder other than stimulant use disorder that is in remission."

¶ 18　　　　A hearing on the petition was held on September 7, 2025, at which respondent testified that since being found unfit, she had completed her required classes in parenting, anger management, and domestic violence and that she had undergone a mental health assessment. According to respondent, she completed her individual counseling prior to 2020 and said she had not completed any further individual counseling after entry of the January 24, 2023, dispositional order. She also testified that she had accomplished 18 months of sobriety. She said she had not completed any drug tests but was willing to do so if the trial court desired. Respondent submitted a certificate of completion from Gateway Foundation relating to her alcohol and drug treatment showing that she had successfully completed the outpatient program in June 2024.

¶ 19　　　　During the hearing, the trial court asked respondent how it could grant her relief,

given that she had surrendered her parental rights to C.R. and her parental rights were terminated. Counsel responded, "We're looking to have her restored to fitness. She's not looking to get her parental rights back."

¶ 20 The following colloquy then occurred:

"THE COURT: Does she have a new child or is there a different child that's a ward of the Court?

[RESPONDENT'S COUNSEL]: Well, the fact of the matter is she could have more children. She could—

THE COURT: Right.

[RESPONDENT'S COUNSEL]:—get involved in a situation where you would want somebody to say, oh, wait a minute. She's an unfit parent.

THE COURT: Right.

[RESPONDENT'S COUNSEL]: She's looking for jobs where perhaps that might be a problem in the background check. All of those things, you know, she wants to be proactive, frankly."

¶ 21 The State opposed the petition, arguing that the trial court lacked jurisdiction and lacked standing and alternatively that she had failed to meet her burden. According to the State,

"She testified she can't remember where she did her domestic violence class. She hasn't done individual counseling since 2020 and the [dispositional] order was entered in 2023; therefore, the Court in 2023 found reason that she needed to do it again. And the psychiatric, she testified she showed them her certificate of completions but who knows what she told them. It's not collateralized. And we have no idea if she's using marijuana, if she's drinking because we don't have any

drops. Therefore, if the Court does find she has standing, she has not remotely met her burden to be found fit."

¶ 22    The trial court denied respondent's petition, finding that respondent's parental rights were terminated after her voluntary surrender of the child. According to the court,

"I don't think that this Court can get into the business of just revisiting fitness as unfortunate as the legal webs are intertangled. You know, I understand the child is still a ward of the Court because we're in adoption status and I understand and commend the idea of being proactive, but I don't know that there is standing here to revisit the issue."

The court's written order found that respondent's parental rights had already been terminated. The court held that respondent lacked standing to revisit the issue of her fitness and the court lacked the authority to do so.

¶ 23    This appeal followed.

¶ 24                                II. ANALYSIS

¶ 25    In October 2025, respondent's appointed appellate counsel filed a motion for leave to withdraw as her counsel and attached a supporting memorandum of law, citing *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d 384 (1967). She argued that "an appeal in this case would be frivolous." This court granted respondent leave to file a response to the motion for leave to withdraw on or before November 7, 2025; none was filed.

¶ 26                             A. *Anders* Motion

¶ 27    The *Anders* procedure pertaining to an appellate counsel's motion to withdraw applies to findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). Under *Anders*, counsel must file a motion to withdraw and a brief outlining

any issues in the record which might arguably support the appeal, explaining why counsel finds those issues frivolous, and concluding that the case presents no viable grounds for appeal. *Id.* at 685. This court will then review the brief and record to determine whether the available arguments are wholly without merit. *People v. Meeks*, 2016 IL App (2d) 140509, ¶ 10.

¶ 28    Here, appellate counsel suggests any appeal in this cause would be frivolous because there are no viable issues to raise in this case. After a full review of the record, counsel identified several potential issues but found none of them sufficient to overturn or challenge the trial court's findings. Finding nothing in the record from which it could reasonably be argued the court's decision to deny respondent's amended petition to restore parental fitness was against the manifest weight of the evidence, counsel asks to withdraw.

¶ 29    We now evaluate counsel's contentions.

¶ 30                              B. Issues Raised

¶ 31    At its crux, this appeal raises the question of whether the trial court properly denied respondent's petition to reinstate her parental fitness, namely, whether respondent had standing to seek such relief. We point out that respondent is not seeking to have her parental rights reinstated. Rather, she seeks only to reinstate her parental fitness.

¶ 32    This appeal is not a direct appeal from the trial court's May 22, 2024, order terminating respondent's parental rights. No such appeal was taken. Instead, this appeal stems from the court's denial of respondent's petition to reinstate her parental fitness. Although appellate counsel intermixes the terms jurisdiction and standing at times, the concern is not whether the trial court had the authority to hear this petition but whether respondent had standing to file it. Subject matter jurisdiction typically refers to "the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." (Internal quotation marks omitted.)

- 7 -

*McCormick v. Robertson*, 2015 IL 118230, ¶ 19.

¶ 33    We now address the issues raised, which primarily relate to the issue of standing.

¶ 34    "Standing is a common law concept, satisfied if a party has a real interest in the outcome of the controversy." *In re Custody of H.J.*, 2021 IL App (4th) 200401, ¶ 18. (Internal quotation marks omitted.) " 'The doctrine of standing is intended to insure that issues are raised and argued only by those parties with a real interest in the outcome of the controversy.' " *In re M.I.*, 2011 IL App (1st) 100865, ¶ 58 (quoting *People v. Greco*, 204 Ill. 2d 400, 409 (2003)). The standing doctrine's purpose "is to ensure that courts are deciding actual, specific controversies, and not abstract questions or moot issues." (Internal quotation marks omitted.) *Custody of H.J.*, 2021 IL App (4th) 200401, ¶ 18. Ultimately, "[s]tanding is an element of justiciability, and it must be defined on a case-by-case basis." (Internal quotation marks omitted.) *M.I.*, 2011 IL App (1st) 100865, ¶ 58.

¶ 35    Standing is reviewed under a *de novo* standard. *Sierra Club v. Illinois Pollution Control Board*, 2011 IL 110882, ¶ 8. Under this standard, we "perform the same analysis a trial court would perform." *Trzop v. Hudson*, 2015 IL App (1st) 150419, ¶ 63.

¶ 36    According to counsel, a trial court maintains jurisdiction over a parent's fitness so long as the minor is a ward of the court; here, the court maintained wardship of the minor for the purposes of adoption. However, section 1-3(11) of the Act provides:

> " 'Parent' means a father or mother of a child and includes any adoptive parent. It also includes a person (i) whose parentage is presumed or has been established under the law of this or another jurisdiction ***. It does not include a parent whose rights in respect to the minor have been terminated in any manner provided by law." 705 ILCS 405/1-3(11) (West 2024).

Respondent's parental rights were terminated by the court, in part because it found her unfit. Moreover, she executed a valid surrender of parental rights that has not been challenged on appeal. Thus, under section 1-3(11) of the Act, respondent failed to qualify as a "parent" of C.R. after her rights were terminated. Thus, respondent cannot utilize her parental status as a means to petition this court to have her once again be deemed fit. She has forfeited that standing by (1) being found unfit and not appealing that finding and (2) executing an otherwise valid surrender of parental rights.

¶ 37        Second, counsel argues that respondent likewise has no standing to bring her petition seeking to regain her fitness because section 2-34(1) of the Act (*id.* § 2-34(1)), which appears to be the sole provision for reinstating parental rights, specifically excludes her as a potential party plaintiff. According to section 2-34(1), a motion to reinstate parental rights can only be filed "by [DCFS] or the minor *** when all the conditions set out in paragraphs (a), (b), (c), (d), (e), (f), and (g) of this subsection (1) are met." *Id.* We note that parental fitness is central to a trial court's decision to terminate parental rights. The Act requires a two-step process, which first requires a showing that the parent is unfit and, if unfit, a determination of whether it is in the child's best interest that parental rights be terminated. See *In re Ca. B.*, 2019 IL App (1st) 181024, ¶ 26. Here, neither DCFS nor the minor have petitioned the court, and because a parent cannot bring such a claim, respondent has no remedy under section 2-34(1).

¶ 38        We are unaware of any statute or judicial decision authorizing a parent whose rights were terminated to attack a finding of unfitness outside the context of a direct appeal of the unfitness determination. The State does not have roving authority to seek declarations of a parent's unfitness; its authority to seek a judicial determination of unfitness arises under the strictures of the Act for purpose of effecting some *remedy* for the benefit of a child. Here, the State pursued a

determination of unfitness as a prerequisite to the termination of respondent's parental rights. Now that those rights have been terminated, respondent—who does *not* seek to contest the termination of her parental rights as to C.R.—similarly lacks the authority to seek a judicial determination of her *fitness* unrelated to the welfare of C.R.

¶ 39        Accordingly, as a matter of law, the trial court correctly determined that respondent lacked standing to revisit the issue of her fitness. Consequently, we agree with counsel that there are no meritorious issues on appeal. Accordingly, we grant her motion to withdraw.

¶ 40                              III. CONCLUSION

¶ 41        For the reasons stated, we grant the motion to withdraw as counsel on appeal and affirm the trial court's judgment.

¶ 42        Affirmed.