2026 IL App (4th) 250938-U

NOS. 4-25-0938, 4-25-0939, 4-25-0940, 4-25-0941, 4-29-0942 cons.

NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 5, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Elij. S, Elia. S., H.S., L.S., and D.S., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Logan County |
|       Petitioner-Appellee, | ) | Nos. 23JA10, |
|       v. | ) |    23JA11, |
| Daniel S., | ) |    23JA12, |
|       Respondent-Appellant). | ) |    23JA13, |
| | ) |    23JA14 |
| | ) | |
| | ) | Honorable |
| | ) | Jonathan C. Wright, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justices Lannerd and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, concluding no meritorious issues could be raised on appeal.

¶ 2    The State filed separate petitions to terminate the parental rights of respondent, Daniel S., to his five minor children. Following the fitness and best-interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. Respondent timely filed a notice of appeal, and counsel was appointed to represent him. Appellate counsel now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending there are no meritorious issues of procedure or substance to be raised on appeal that would warrant relief. See *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000) (holding *Anders* applies to termination of

parental rights cases). We agree. Therefore, we grant counsel's motion to withdraw and affirm the court's judgment.

¶ 3                                I. BACKGROUND

¶ 4           In March 2023, the State filed petitions for the adjudication of wardship of six minor children: Et. S. (born November 12, 2011); Elij. S. (born September 2, 2016); Elia. S. (born July 25, 2019); H.S. (born December 26, 2020); L.S. (born January 6, 2022); and D.S. (born December 17, 2022). Kaley G. is the mother of all six minors. Timothy S. is the father of Et. S. Respondent is the father of the other five minors. Kaley G. and Timothy S. are not parties to this appeal. Rather, this appeal involves the termination of respondent's parental rights as to his five children, Elij. S., Elia. S., H.S., L.S., and D.S. Although filed separately, the trial court proceedings for all the children were held jointly. This court consolidated the appeals and will discuss only those facts relevant to respondent's appeal.

¶ 5                    A. The Abuse/Neglect Petitions and Initial Proceedings

¶ 6           The petition for adjudication as to H.S. (two years old at the time) alleged she was abused by respondent, who (1) inflicted physical injury, by other than accidental means, which caused impairment of H.S.'s physical or emotional health or impairment of any bodily function of H.S. (705 ILCS 405/2-3(2)(i) (West 2022)) and (2) committed a sex offense against H.S. (*id.* § 2-3(2)(iii)). The petitions for adjudication as to Elij. S. (6½ years old), Elia. S. (3½ years old), L.S. (14 months old), and D.S. (3 months old) alleged they were neglected in that (1) their environment was injurious to their welfare, as evidenced by physical injury, by other than accidental means, being inflicted on their sibling, which caused impairment of their sibling's physical or emotional health or bodily function (*id.* § 2-3(1)(b)) and (2) their environment was injurious to their welfare, as evidenced by a sex offense being committed against their sibling

(*id.*). At the shelter-care hearing, the trial court found probable cause to support the allegations in each of the petitions and found an immediate and urgent need to remove the children from the home. This was based on evidence presented showing H.S. had sustained significant injuries resulting from an alleged sexual assault while in the home with the parents and children present, requiring H.S. to be hospitalized and undergo surgery. The court granted temporary custody and guardianship of all the children to the Illinois Department of Children and Family Services (DCFS). The children were initially separated in different foster placements, but eventually, all five of respondent's children were placed in the care of Shelly S., their maternal great-aunt.

¶ 7        In September 2023, H.S. was adjudicated abused and the other children were adjudicated neglected. The dispositional hearing was held a month later. It was reported at that time, respondent had been charged criminally for allegedly being responsible for injuries sustained by H.S., and he had been incarcerated in the Logan County jail but was granted pretrial release in September 2023. The trial court found respondent unfit and unable to care for the minor children and placed custody and guardianship of the children with DCFS. Respondent was ordered to cooperate with DCFS and complete the recommended services, including completing a sex offender assessment, mental health assessment, and parenting assessment, securing a legal income source, and acquiring appropriate housing. At each of the permanency hearings that followed, respondent's attorney acknowledged respondent had not completed any services other than a parenting class, explaining respondent's criminal defense attorney had advised him to not engage in "certain services." The court informed respondent that following the advice of his criminal defense attorney was not an excuse to not participate in any services. At each hearing, the court admonished respondent he must cooperate with DCFS, follow the service plan, and correct any conditions that required the children to be in care or risk termination of his parental

rights.

¶ 8                                    B. Termination Proceedings

¶ 9              In April 2025, the State filed petitions to terminate parental rights as to all of the children. The State alleged respondent was unfit and failed to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare (750 ILCS 50/1(D)(b) (West 2024)). The petition alleged further that respondent failed to make reasonable efforts to correct the conditions that were the basis for removal of the children or reasonable progress toward the return of the children during any nine-month period after adjudication (*id.* § 1(D)(m)(i), (ii)). The relevant time periods listed were October 28, 2023, through July 28, 2024, and July 4, 2024, through April 4, 2025.

¶ 10             In May 2025, respondent's attorney made an oral motion to continue the proceedings until respondent's criminal trial was concluded, and he "expecte[ed] that to be possibly later this year." The trial court noted respondent's criminal case was not set to be heard until December, and "that's only tentatively." The court denied the motion, explaining the "overarching consideration" is the best interest of the children and permanency, and this case had been pending for two years.

¶ 11                                    1. *Fitness Hearing*

¶ 12             The fitness hearing was held in July 2025. Prior to the hearing, respondent's counsel again asked the matter to be continued until January 2026 because respondent's criminal trial was set to be heard in December 2025. The trial court denied the motion and proceeded with the hearing.

¶ 13             The State called Abigail Paul, a foster care supervisor with the Center for Youth and Family Solutions (CYFS), to testify. Paul testified her agency first became involved with the

children in March 2023, and she served as the caseworker for all of respondent's children for about a year, until she transitioned into a supervisory role. Paul testified respondent participated in the integrated assessment. Among the services recommended for him were a sex-offender assessment and, if necessary, treatment, parenting classes, and individual counseling. Respondent was also required to obtain sufficient legal income and appropriate housing. In October 2023, respondent was referred for a sex-offender assessment, which was to take place the following month. At that time, respondent "declined the service because of his criminal felony case." Respondent was referred for individual psychotherapy in September 2023 and was assigned a counselor the following month. When the counselor called respondent to schedule an initial appointment, respondent declined the service. Respondent told Paul he was advised by his criminal defense attorney to not participate in services. Paul explained to respondent there was a difference between juvenile abuse cases and services and his criminal case. Respondent continued to decline to participate in services, despite being asked to do so at every monthly meeting. Respondent had been asked to provide proof of income, but he told Paul he was unable to obtain a job because of the restriction that he is not allowed around minors. Paul testified, after respondent was released from the Logan County jail, he moved in with his parents in Atlanta, Illinois. Paul asked to visit the home one time, but respondent declined because his parents were not home. To Paul's knowledge, the agency has been unable to visit the home. The only service respondent completed was a 10-week online parenting course. Paul acknowledged CYFS was unable to offer parenting coaching to respondent because there were no parenting coaches available at that time.

¶ 14     Bridget Mahan, the foster care family caseworker who replaced Paul on these cases in April 2024, testified. Mahan confirmed she met with respondent on a monthly basis and

spoke with him about completing the sex-offender assessment and individual counseling. Respondent said, on the advice of his criminal defense attorney, he could not engage in services. Mahan stated respondent had been unemployed the entire time she had been the caseworker for these children, and respondent never established he had adequate housing for the children.

¶ 15 Respondent's counsel proffered that respondent would testify his failure to complete the services, specifically, the sex-offender assessment, individual counseling, and psychotherapy, was due to the advice of his criminal defense attorney. Respondent was charged with very serious crimes and was following the advice of his counsel.

¶ 16 After hearing argument, the trial court found the State proved by clear and convincing evidence respondent was unfit for failing to make reasonable efforts and reasonable progress during the time periods indicated in the petition. The court noted the "core" of this case was the requirement that respondent complete a sex-offender assessment and any treatment that might be ordered as a result. Further, the court concluded:

> "And although [respondent] has the right in his criminal case, and based upon his advice of his criminal defense attorney, to decline those services, it still has a consequence in the abuse and neglect case. And there have been court rulings prior to this at the appellate court level that indicated that that is not a basis to refuse or decline the services, at least to the extent that the consequences of reasonable efforts and reasonable progress."

¶ 17 2. *Best-Interest Hearing*

¶ 18 On September 4, 2025, the best-interest hearing was held. The State presented the best-interest report, and no other evidence was presented at the hearing.

¶ 19 The report indicated that Elij. S., Elia. S., and L.S. were initially placed with their

- 6 -

maternal grandmother and step-grandfather, and the two youngest children, H.S. and D.S., were placed with Shelly S. The grandparents were unable to manage Elij. S.'s behavioral issues stemming from his attention deficit hyperactivity disorder and autism. He was moved to the care of Shelly S. Elij. S. is described as a happy child who loves to laugh and play on the phone. His behavior was improving; he was having fewer "meltdowns," getting along with his siblings, and learning to enjoy playing independently. Elia. S. and L.S. were later moved to the care of Shelly S. after an investigation alleging the physical abuse of Elia. S. by her grandparents was opened. Elia. S. had been having difficulty, displaying negative behaviors such as defecating in her room and smearing her feces in the room, as well as some sexualized behavior. Shelly S. attempted to work with Elia. S. through this behavior but ultimately gave notice of the removal of the placement, and DCFS was actively seeking a placement that could provide her with permanency. H.S. is reportedly well-adjusted to her foster home and is very comfortable with her caregiver. She is described as "a bit sassy but respectable," plays well with her siblings, and does not have any clinical diagnoses. L.S. likewise has no clinical diagnoses and is described as "loving and eager to learn." D.S. is nonverbal but very active.

¶ 20          The children reportedly feel love, attachment, and a sense of value in the care of Shelly S. and refer to their placement as " 'home.' " The report goes on to describe the children's connection to Shelly S., who encourages the children to explore their feelings and express themselves, and the children seek her out for comfort. The children have a sense of familiarity, and their needs are met in their foster home. Shelly S. expressed a "deep love" for all of the children as if they were her own biological children. She is willing and able to provide permanency for Elij. S., H.S., L.S., and D.S. and to ensure their sibling relationships are maintained. She was "heartbroken" by the decision to explore an alternative placement for

Elia S. but wants her to be in a home that is capable of caring for her special needs and giving her the one-on-one attention she requires. Respondent has had no visitation with the children since the opening of the case due to a no-contact order in his criminal case.

¶ 21    After hearing argument from the parties and considering the statutory best-interest factors, the trial court determined the State proved by a preponderance of the evidence that termination of respondent's parental rights was in the best interest of all five children. The court recognized the serious health and safety concerns that led to the children's removal and concluded the physical safety and welfare of the children would be best served by terminating respondent's parental rights. The court commented on the background, ties, and sense of attachment, noting the oldest two children had more difficulty because they had more than one placement, but the other three children were "rooted in their home." The court considered the sense of security, familiarity, and continuity of affection in the foster home, and it found termination represented the least disruptive placement alternative and the means to achieve permanency for all of the children.

¶ 22    This appeal followed.

¶ 23                    II. ANALYSIS

¶ 24    The involuntary termination of parental rights is a two-step process under section 2-29(2) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-29(2) (West 2024)). The State must first prove by clear and convincing evidence the parent is "unfit," as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). If the State meets this burden, it must then prove by a preponderance of the evidence that termination of parental rights is in the best interest of the child. *In re D.T.*, 212 Ill. 2d 347, 363-66 (2004). A trial court's finding of unfitness will not be reversed unless it is

- 8 -

against the manifest weight of the evidence. *In re N.G.*, 2018 IL 121939, ¶ 29. A finding that termination of parental rights is in the best interest of a child is reviewed under the same standard on appeal. *In re Tamera W.*, 2012 IL App (2d) 111131, ¶ 43. A decision is "against the manifest weight of the evidence only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." (Internal quotation marks omitted.) *In re M.C.*, 2018 IL App (4th) 180144, ¶ 35.

¶ 25        On appeal, respondent's counsel has moved to withdraw on the basis it would be frivolous to argue the trial court erred in finding (1) respondent unfit and (2) it was in the best interest of Elij. S, Elia. S., H.S., L.S., and D.S. to terminate respondent's parental rights. We agree.

¶ 26                                A. Unfitness

¶ 27        As grounds for finding respondent unfit in this case, the State alleged he failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the children (750 ILCS 50/1(D)(b) (West 2024)), make reasonable efforts to correct the conditions that were the basis for removal of the children from his care during the relevant time periods (*id.* § 1(D)(m)(i))), and make reasonable progress toward the return of the children to his care during the relevant time periods (*id.* § 1(D)(m)(ii)). The State is not required to prove every ground it has alleged in the petition, and a parent's rights may be terminated if a single alleged ground for unfitness is supported by clear and convincing evidence. *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005).

¶ 28        It is undisputed that respondent failed to make reasonable efforts or reasonable progress in this case. The record reveals respondent was never gainfully employed, and he failed to establish proof of adequate housing during the pendency of this case. At every permanency

hearing and at the fitness hearing, respondent's counsel acknowledged respondent failed to engage in the required services, most notably, a sex-offender assessment, a mental health assessment, and individual counseling. Respondent's counsel explained respondent's refusal was based on the advice of his criminal defense attorney, presumably out of concern for potentially engaging in any activity or making any admissions that could be self-incriminating and used against him in the pending criminal proceedings.

¶ 29　　　　It is well settled that the fifth amendment (U.S. Const., amend. V) right against self-incrimination applies to juvenile proceedings. *In re A.W.*, 231 Ill. 2d 92, 107 (2008). As such, the fifth amendment protects a parent in a juvenile court proceeding from being compelled, by threat of the loss of parental rights, to admit to a crime that could be used against him in a subsequent criminal proceeding. *Id.* at 108. An important distinction has been recognized, as follows:

> "However, there is a fine, but important, distinction between terminating parental rights based specifically upon a parent's refusal to admit that which he denies, thereby forcing him to waive the fifth amendment privilege against self-incrimination, and terminating parental rights based upon a parent's failure to comply with an order to undergo meaningful therapy or rehabilitation, because a parent's refusal to admit sexual abuse inhibits meaningful therapy. The latter is constitutionally permissible, while the former is not." *In re P.M.C.*, 387 Ill. App. 3d 1145, 1151 (2009).

¶ 30　　　　A trial court may order compliance with a service plan that requires a parent to engage in effective counseling or therapy, including a sex-offender assessment and counseling, but it may not compel counseling or therapy requiring a parent to admit to committing a crime.

*A.W.*, 231 Ill. 2d at 108. In this case, there is nothing in the record to suggest respondent was being required to admit to wrongdoing, nor was he ordered to complete a specific program that required him to admit to abusing the minor. Respondent was required to complete a sex-offender assessment and a mental-health assessment and comply with any recommendations made based on those assessments. If respondent found the specific services objectionable, he made no requests to seek alternative counseling or therapy. Instead, respondent argued at every hearing that the trial court should, in effect, disregard or excuse his failure to comply with the assessment and counseling requirements because his failure to comply was based on the advice of his criminal defense counsel. This is no basis for refusing, during the two years this case was pending, to engage in any services to make reasonable efforts to correct the conditions that caused the children to be placed in foster care or reasonable progress toward their return home. Thus, we find there is no issue of arguable merit to be raised on appeal regarding the court's determination that respondent was unfit.

¶ 31                                                        B. Best Interest

¶ 32          After finding a parent unfit, the trial court must then determine whether it is in the best interest of the children that parental rights be terminated. *D.T.*, 212 Ill. 2d at 352. In making this determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's

- 11 -

need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." (Internal quotation marks omitted.) *In re Custody of H.J.*, 2021 IL App (4th) 200401, ¶ 22.

The court's best-interest decision need not explicitly reference each factor, and an appellate court does not need to "rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19.

¶ 33        After our careful review of the record, we agree with appellate counsel there is no issue of arguable merit to be raised on appeal regarding the trial court's best-interest determination because it was not against the manifest weight of the evidence. The court considered the evidence presented and the applicable statutory factors. The best-interest report showed all of the children were in a home together and felt a sense of security, familiarity, and love. Shelly S. was shown to be meeting the needs of the children, providing them with a safe place they referred to as their " 'home,' " and expressing a "deep love" and affection for all five children as if they were her own biological children. She has stated her willingness to adopt Elij. S, H.S., L.S., and D.S., as well as "heartbr[eak]" over seeking to explore an alternative permanent placement for Elia. S. due to her profound need for more individualized care and attention. Even at the best-interest hearing, respondent's counsel focused on respondent's interests and not the children's, stating he had been prevented from seeing his children due to the no-contact order in his criminal case despite being presumed innocent, and his decision to not "avail himself of services [was] because of his adherence to the advice of counsel." However, the focus of the best-interest hearing is on the needs and interests of the children. "[T]he parent's

interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The trial court determined termination of respondent's parental rights would be the least disruptive placement alternative for each of the minor children and achieve the need for permanency. Under the circumstances, we conclude this decision was not against the manifest weight of the evidence.

¶ 34                                    III. CONCLUSION

¶ 35            For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 36            Affirmed.